UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY D. MILLIRONS,<br><br>    Plaintiff,<br><br>    v.<br><br>ILLINOIS DEPARTMENT OF HUMAN SERVICES,<br><br>    Defendant. | No. 23 CV 5785<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kimberly Millirons was a Maintenance Equipment Operator for the Illinois Department of Human Services. One of her responsibilities was delivering COVID-19 tests to a lab. Sometimes she would deliver those tests using her personal vehicle, and sometimes she would use a van provided by the Department. When her supervisor noticed discrepancies between Millirons's timesheets and the GPS data on her assigned van, he investigated the irregularities and initiated a disciplinary process. After receiving a pre-disciplinary report and a hearing, Millirons was suspended for 20 days. The following year, she filed a charge of discrimination with the Illinois Department of Human Rights. Eventually, Millirons's job became so distressing that she resigned. Millirons now sues the Department of Human Services for harassment, retaliation, constructive discharge, and discrimination based on her race, sex, and age.

The department's motion for summary judgment is granted. Two of Millirons's claims are precluded because she failed to exhaust administrative remedies, and the

other two fail because she has not produced sufficient evidence to create a genuine issue of material fact as to the reason for her suspension or the adverse or hostile nature of her workplace.

I.     **Legal Standards**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, I view the facts and draw all inferences in the light most favorable to the nonmoving party, here Millirons. *Smith v. Kind*, 140 F.4th 359, 362, 364 (7th Cir. 2025).

A party asserting that a fact cannot be or is genuinely disputed must support its assertion by either citing materials in the record or showing that the opposing party cannot support the fact with admissible evidence. Fed. R. Civ. P. 56(c)(1). I am only required to consider materials cited by the parties, but I may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). Discovery is the opportunity for parties to acquire the evidence they need—whether that be through depositions, documents, declarations, or any other discovery device—to prove that there is a genuine issue of material fact and the case should proceed to trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Without that evidence, summary judgment must be granted. "[C]onclusory statements, not grounded in specific facts, are not

sufficient to avoid summary judgment." *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004).

## II. Local Rule 56.1 and Evidentiary Rulings

In a motion for summary judgment, Local Rule 56.1 controls how the parties present evidence. Even when the litigant is unrepresented, I am not required to "scour the record looking for factual disputes." *See Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (quoting *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001). But any "document filed pro se is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). I exercise my discretion not to require strict compliance with the Local Rules for a pro se litigant when it would not prejudice her adversary.

Millirons has substantially complied with Local Rule 56.1(b). While her filings are not organized like a lawyer's would be, they do contain a supporting memorandum of law, [61] at 41–51; a concise response to the department's statement of facts, with numbered paragraphs responding to each numbered paragraph in the movant's statement of facts, [61] at 26–35; and a statement of additional facts, [61] at 38–39.[1]

It appears that Millirons inadvertently included two statements of additional facts. [61] at 35–39. The first is unrelated to the facts of this case. [61] at 35–36. The three assertions at the end of her response to the department's statement of facts—under the heading "Local Rule 56.1(b)(3)(C) Statement of Additional Facts"—appear

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number.

3

to pertain to a recent case from Tennessee. *See Ramos v. Marlowe's Inc.*, 2:23-cv-02502 (W.D.Tenn. 2023). I strike that portion of Millirons's filing.

In her statement of additional facts, Millirons makes 14 factual allegations, 12 of which the defendant objects to. [67]. She also recognized all 44 of the department's factual assertions as undisputed. [61] at 26–35. At the summary judgment stage, parties cannot rely on mere allegations; they need to provide admissible evidence to support any assertions of fact. Fed. R. Civ. P. 56(c).

For all but one of her factual assertions, Millirons cites to her own statements. [61] at 38–39. Millirons may rely exclusively on her own testimony to make her case. I will not assess her credibility or balance the relative weight of conflicting evidence—those are a jury's responsibility. *Wood v. Sec. Credit Servs., LLC*, 126 F.4th 1303, 1315 (7th Cir. 2025). But her testimony must be admissible.

Millirons is a lay witness, and the Federal Rules of Evidence requires a lay witness to have personal knowledge of the matter she is testifying about. Fed. R. Evid. 602. That means a lay witness will most often testify about "what they saw, heard, or did in particular circumstances." *Patterson v. Baker*, 990 F.3d 1082, 1085 (7th Cir. 2021). By contrast, if a lay witness testified about what a third-party said the third-party saw, that would generally be inadmissible hearsay. Fed. R. Evid. 801. Courts impose a personal knowledge requirement on witnesses because people who personally observed an event are the most reliable sources of information about that event. Fed. R. Evid. 602 advisory committee's note to proposed rule.

4

Millirons's deposition demonstrates that she does not have the requisite personal knowledge to testify about many of her factual assertions. Millirons repeatedly acknowledges that the only basis for her allegations is the information she learned from a pre-disciplinary report. *See* [52-1] at 23:3–9; [52-1] at 33:2–7; [52-1] at 44:15–45:1. During discovery, Millirons needed to find other witnesses that saw or heard the specific conduct she is complaining of and either depose them or enter declarations from them into the record. She has not done so.

To the extent that Millirons's statement of facts relies on her testimony within her personal knowledge, those statements are supported by admissible evidence. *See* [67] ¶¶ 1, 2, 10–14. But I cannot consider assertions relying on inadmissible hearsay or lacking in any factual support. *See* [67] ¶¶ 3–9.

### III. Facts

The Illinois Department of Human Services hired Millirons, a Black woman, in 2018 to work as a support service worker in food service at the Elgin Mental Health Center. [52] ¶ 1.[2] During the relevant period, Millirons was in her early 60s. *See* [67] ¶ 1. In 2019, Millirons changed positions within the Department of Human Services, becoming a Maintenance Equipment Operator. [52] ¶ 2. In that role, Millirons was responsible for transporting patients, as well as picking up and delivering supplies and other materials. [52] ¶ 5. Her direct supervisor was Nick Kanellopoulos. [52] ¶ 12.

---

[2] The facts are taken from the defendant's statement of facts, [52], and response to Milliron's statement of facts, [67], because the defendant submitted them as independent docket entries, allowing for more precise citation. Millirons admitted all the defendant's factual assertions.

During the COVID-19 pandemic, Millirons was tasked with delivering medical items to the Illinois Department of Public Health Lab in Chicago. [52] ¶ 15. Subject to conditions, Department of Human Services employees are allowed to use their personal vehicle to complete their job duties. [52-9]. Millirons was assigned a van belonging to the Department of Human Services but would sometimes use her personal vehicle. [52] ¶ 17; [52-1] at 59:15–60:11. In July 2020, Millirons made several deliveries to the Department of Public Health Lab without using her assigned van. *See* [52] ¶¶ 21, 25–27 (the van assigned to Millirons never left the Elgin Mental Health Center on July 14, 15, 22, and 30); [52-10] at 19 (the Department of Public Health Lab received the deliveries assigned to Millirons on July 14, 15, 22, and 30).

On July 22, Millirons forgot to sign out on her timesheet at the end of her workday. [52-1] at 55:24–56:2. After seeing that timesheet error the following day, Kanellopoulos began investigating Millirons for time abuse. [52-10] at 1–2. Kanellopoulos discovered that Millirons requested overtime pay for work done on four days when her assigned van did not leave the Elgin Mental Health Center. [52] ¶¶ 23–27. At the conclusion of his investigation, Kanellopoulos compiled his findings in a memorandum and requested a pre-disciplinary hearing. 52 ¶ 13; [52-10]. Following the pre-disciplinary hearing, the Department of Human Services suspended Millirons for 20 days. [52] ¶ 30. Millirons served her 20-day suspension and returned to work in November 2020. [52] ¶ 30.

In July 2021, Millirons filed a charge of discrimination with the Illinois Department of Human Rights. [52-17]. In that charge, Millirons complained of a

6

hostile work environment and being suspended based on her race, sex, and age. [52-17]. In November 2021, Millirons received a second pre-disciplinary report for damaging a food truck. [22]. She did not receive any further discipline for the incident involving the food truck. [52] ¶¶ 32–36. Over the next few months, Millirons began experiencing severe emotional distress at her job, until she resigned in June 2022. [52] ¶ 37; [67] ¶¶ 12–14.

## IV. Analysis

Millirons's complaint is brief, but it contains enough information to identify the claims she asserts in this lawsuit. She alleges that the Illinois Department of Human Services discriminated against her based on her race, sex, and age, and retaliated against her for reporting discrimination, until she was forced to quit, in violation of the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964.[3] [22]. Those allegations give rise to four claims: (1) constructive discharge, (2) retaliation, (3) employment discrimination, and (4) a hostile work environment.

In response to the department's motion to dismiss, Millirons also frames her claim as arising under 42 U.S.C. § 1981. [61] at 2, 4, 9–10. A plaintiff can only sue private actors under § 1981. *Campbell v. Forest Pres. Dist. of Cook Cnty., Ill.*, 752 F.3d 665, 667 (7th Cir. 2014). A lawsuit for violations of § 1981 by a state actor must be brought under § 1983, *id.*, which provides that every "person" who, under color of

---

[3] Through the State Lawsuit Immunity Act, Illinois consents to being sued in federal court for violations of the Age Discrimination in Employment Act of 1967 and Title VII of the Civil Rights Act of 1964. 745 ILCS 5/1.5.

7

state law, deprives someone of their civil rights "shall be liable to the party injured," 42 U.S.C. § 1983. Only "persons" can be sued under § 1983, and "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Illinois Department of Human Services, as a state agency, is part of the state and cannot be sued under § 1983. *Weston v. Illinois Dep't of Hum. Servs.*, 433 F.App'x 480, 482 (7th Cir. 2011). To the extent that Millirons's allegations could be construed as brought directly against Kanellopoulos, Epperson, and Evans in their personal capacities, it would not affect the outcome of this motion. *See Barnes v. Bd. of Trs. of Univ. of Illinois*, 946 F.3d 384, 389 (7th Cir. 2020) ("The legal standard for analyzing racial discrimination claims under Title VII and § 1983 is the same.").

### A. Exhaustion

To bring a claim under Title VII or the Age Discrimination in Employment Act, Millirons must first exhaust her administrative remedies by filing charges with the Equal Employment Opportunity Commission and receiving a right to sue letter. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). Millirons received a right to sue letter, [52-21], but that does not confer a right to sue for any claim. "A Title VII plaintiff may bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)). "This requirement has two purposes: first, it allows the EEOC and the employer an opportunity to settle the matter, and second, it ensures that the

8

employer has adequate notice of the conduct the employee is challenging." *Chaidez*, 937 F.3d at 1004. The exhaustion requirement for claims under the Age Discrimination in Employment Act is functionally identical. *See Hambrick v. Kijakazi*, 79 F.4th 835, 841 (7th Cir. 2023).

"Claims are 'like or reasonably related' when (1) 'there is a reasonable relationship between the allegations in the charge and the claims in the complaint' and (2) 'the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.'" *Chaidez*, 937 F.3d at 1004 (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)) "The charge and complaint 'must, at minimum, describe the *same conduct* and implicate the *same individuals*.'" *Id.* (quoting *Cheek*, 31 F.3d at 501) (emphasis in original). "The fact that the charge and complaint generally assert the same kind of discrimination is not sufficient, without some factual relationship between them." *Id.* at 1005.

Millirons has not exhausted administrative remedies for her claims of constructive discharge and retaliation. Millirons filed her charge of discrimination with the Illinois Department of Human Rights in July 2021, [52-17], eleven months before she resigned, [52-16]. The Department of Human Services could not have been put on notice for a constructive discharge claim while she was still working there. Millirons also did not mention any protected activity in her charge that could put the Department of Human Services on notice for a retaliation claim. The first protected activity Millirons engaged in was filing her charge of discrimination. *See Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) ("Protected

activity is some step in opposition to a form of discrimination that the statute prohibits.") (cleaned up). Millirons argues that she does not need to exhaust remedies under §§ 1981 & 1983, but her claims do not arise under those statutes.

Dismissal for failure to exhaust administrative remedies are without prejudice. *Chaidez*, 937 F.3d at 1008. And so Milliron's claims for constructive discharge and retaliation must be dismissed without prejudice. She may, subject to any applicable statute of limitations, file those claims with the Illinois Department of Human Rights and Equal Employment Opportunity Commission. *Id.*

### B. Employment Discrimination and Hostile Work Environment Claims

Millirons frames her employment discrimination claim under *Ortiz v. Werner Enterprises, Inc.*, so the legal standard "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused" the adverse employment action. 834 F.3d 760, 765 (7th Cir. 2016). Under *Ortiz*, "all evidence belongs in a single pile and must be evaluated as a whole." *Id.* at 766.

Whether Millirons presents her claims under *Ortiz* or, as the department does, under *McDonnell Douglas* makes no difference here. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). When an "employer raises the employee's performance as the reason for the adverse employment decision," I can skip the *McDonnell Douglas* prima facie analysis and proceed directly to pretext. *Napier v. Orchard Sch. Found.*, 137 F.4th 884, 892 (7th Cir. 2025) (citing *Vichio v. US Foods,*

10

*Inc.*, 88 F.4th 687, 691 (7th Cir. 2023)). Under such circumstances, "the *McDonnell Douglas* and *Ortiz* frameworks come together." *Id.*

Looking at the evidence as whole, no reasonable factfinder could conclude that Millirons was suspended because of her race, sex, or age. Other than the fact that she is a Black woman in her 60s, Millirons has no evidence that she was treated differently because of her race, sex, or age. In the three years prior to her suspension, five other employees were suspended or discharged for first offenses. [52-18] at 11. Among those five, two were non-Black, two were male, and all were younger than Millirons. [52-18] at 11. All suspensions were at least twenty days long. [52-18].

"To establish a hostile work environment claim, a plaintiff must show: (1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Arnold v. United Airlines, Inc.*, 142 F.4th 460, 476 (7th Cir. 2025) (quoting *Trahanas v. Nw. Univ.*, 64 F.4th 842, 853 (7th Cir. 2023)).[4] "To rise to the level of a hostile work environment, conduct must be sufficiently severe or persuasive to alter the conditions of employment such that it creates an *abusive* relationship." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015) (emphasis in original).

Millirons provides evidence that the work environment was subjectively offensive and that there is a basis for employer liability. *See* [61] at 25 (Millirons's

---

[4] Millirons asserts that her hostile work environment claim arises under 42 U.S.C. § 1981. It cannot, but the elements needed to establish liability under Title VII and § 1981 are the same. *See Alamo v. Bliss*, 864 F.3d 541, 549 n.16 (7th Cir. 2017).

11

medical records detailing how she found her work environment subjectively offensive); *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004) (recognizing that "an employer may be liable if a supervisor is responsible for the harassment"). But Millirons cannot satisfy the remaining elements of a hostile work environment claim.

There is no evidence that whatever harassment Millirons experienced was motivated by her race, sex, or age. Even if subjectively offensive, being investigated and reprimanded for irregularities in her timekeeping was not objectively offensive. The seven examples of harassment that Millirons detailed in her deposition, [52-1] at 43:9–44:10, were not sufficiently severe or pervasive to make her work environment an abusive one. A bad workplace is not necessarily an illegal one, and Millirons has not furnished sufficient evidence for her claims to survive summary judgment.

## V. Conclusion

Defendant's motion for summary judgment, [50], is granted. Plaintiff's claims for constructive discharge and retaliation are dismissed without prejudice for failure to exhaust administrative remedies. Judgment on the merits is entered in defendant's favor on plaintiff's claims for harassment and discrimination. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: August 12, 2025